RUTHERFORD COUNTY, TENNESSEE v. CITY OF MURFREESBORO, TENNESSEE.—309 S. W. (2d) 778.

Middle Section.  July 26, 1957.

Petition for Certiorari denied by Supreme Court February 6, 1958.

Lewis S. Pope, Nashville, for complainants.

Alfred B. Huddleston, Murfreesboro, for defendant.

## I.

SHRIVER, J. This is a case from the Chancery Court of Rutherford County, involving certain property on the Public Square in the city of Murfreesboro, the County seat, which property is around and adjacent to the Court House, and which, according to the contention of the complainant, belongs to the County. By its bill, the County seeks to have settled its rights in, and ownership of, said property, as well as the boundary line around the Court House yard.

The case was heard on oral and documentary evidence before the Chancellor on a stipulation that it would be tried according to the forms of Chancery and the result was a dismissal of the bill and a refusal to grant any of the relief prayed.

From the decree of the Chancellor the County has appealed and assigned errors.

## II.

### The Pleadings

The original bill recites, among other things, that the complainants M. H. Jones, Walter Taylor and Silas M. Hoover are residents of Rutherford County and compose a committee appointed by the Quarterly County Court of that County for the purpose of trying to adjust differences existing between the County and the City of Murfreesboro involving the maintenance of parking meters on an area alleged to be the property of the County adjacent to the Court House; and, in the event the matter could not be satisfactorily adjusted with the City of Murfreesboro, that said committee was authorized by

said resolution to employ counsel and to institute legal action for and on behalf of the County for the purpose of having a judicial determination of title to, and the location of the lines around the land belonging to the County in connection with the Court House, and for the removal of the parking meters installed by the City on the land belonging to the County.

It is alleged that the aforesaid County committee, after extended negotiations, was unable to reach any agreement with duly constituted officials of the City and that, therefore, this suit was instituted as directed by the Quarterly County Court.

The prayers of the bill are (1) for process (2) that the boundary lines of the land belonging to the County of Rutherford, as described in this bill, be located and established by a decree of the Court, and that the said County be given full and complete possession of said land included within said boundary lines, and that the defendant, City of Murfreesboro, be ordered to vacate any and all land included within said boundary lines and enjoined from interfering with said land, or in any manner using the same, or infringing upon the rights of the County of Rutherford concerning said land. In any and all events let the bondary lines of said land be definitely determined and located by a proper decree of the Court, (3) for an accounting on the part of the City for the money collected by it from the use of the parking meters located on the land in question, or, for the payment of a reasonable rent for its use during the time that the City has had parking meters on it; (4) that the injunction prayed in (#2) hereinabove be made permanent at the hearing.

The defendant filed pleas in abatement simultaneously with, but separately from, its answer. Said pleas question the authority of complainants to maintain a suit seeking rent or other compensation for the use of the land in question and, particularly, as pertains to any area outside of the "inner circle", which is the land immediately involved.

The answer of the City is in great detail but, in substance, it denies that the County is the owner of the property comprising the "inner circle", and asserts that there was a dedication by the County of the property in question to public use as a street and that, therefore, it is within the jurisdiction and control of the City of Murfreesboro.

### III.

### Assignments of Error

There are five assignments of error which complain that the Chancellor dismissed complainants' bill without granting any of the relief prayed, it being the position of complainants that it was, and is, entitled to have an adjudication as to the ownership of the land described in the bill and the rights of the parties in respect thereto.

The assignments also assert that it was error to hold that the County had dedicated this disputed area as a public street, and that complainant was not entitled to the injunction prayed for and an accounting for money received from the parking meters installed on said property.

The defendant filed two cross assignments of error asserting that the Chancellor erred in not sustaining the defendant's pleas in abatement.

## IV.

There are several maps and drawings in the record which, along with some photographs, show very clearly the situation which is described in the bill and the answer.

Said maps show that Church Street and Maple Street run through the public square, and, as they pass through said square, they constitute a part of the paved or traveled portion of same on the East and West sides, respectively.

They also show that the Court House is located approximately in the center of the Square; that there is a curb around the North, East, South and West sides thereof; that outside of said curb there is a paved inner circle extending from the aforementioned curb to the inside of a six foot concrete pavement, or sidewalk, around the outside of said circle; that there are openings on the East and West sides of this outside pavement, or sidewalk, which enable vehicles to enter and leave said "inner circle" where parking is permitted.

Outside of this six foot sidewalk it is not disputed that the remainder of the square is a traveled portion of same constituting a public thoroughfare or street.

The record does not show how much of the Square was enclosed in the Court House yard prior to 1870 or 1871. However, the minutes of the Quarterly County Court of the Jan. term 1871 show that a fence around the Court House was built on a stone foundation with a total perimeter of 807½ feet. Thus, it is seen that in 1871, the Court House yard consisted of the area inside said fence which remained in the same location until it was removed by the County in 1917.

The area on the Public Square, outside of said iron fence, was, for many years prior to 1917, open to pedestrians, horse, mule and vehicle travel and use. Horses and teams were hitched around it and the area was used to some extent for trade and commerce.

The record shows that from the late 1920's until 1938 the City of Murfreesboro was making almost a continuous effort to persuade the County to allow it to use more of the Public Square for street purposes, and the County sought to cooperate with the City as is evidenced by resolutions passed by the County Court and by the City Council.

It is clear from the record that, during all this time, the County was seeking to preserve and protect the Court House property, including a suitable lawn or space around the Court House building.

Exhibit #9, (R. p. 99) is a resolution passed by the Quarterly County Court on October 1, 1928, which contains this language:

"That in view of the fact that there is pending a proposition to decrease the size of the Courthouse yard, in order that there may be more room on the Public Square of the City of Murfreesboro for travel and parking of automobiles, a Committee of three members of this Court be appointed by the Chairman to confer with all parties interested, and particularly with the City authorities of the town of Murfreesboro.

\* \* \* \* \* \*

"The object and purpose of this resolution is to empower the Chairman of this Court to appoint a

Committee for the aforesaid purpose, and nothing herein shall be construed as a waiver of any rights or the ceding of any interest to the City of Murfreesboro.''

The committee appointed pursuant to the foregoing resolution reported that some 27½ feet on each side of the building, inside the Court House yard, should be turned over to the City, and recommended that the line around the said Court House yard be set back about 20 feet all the way around, but the record shows that this report of the committee was tabled at the Jan. term 1929.

Again in 1935 the record shows that Esquire H. M. Jennings offered a resolution to grant the City of Murfreesboro certain portions of the Court House yard for parking space. On the question being put to a vote, said resolution failed by a vote 21 for and 23 against. (Tr. Ex. 12, p. 102)

As stated hereinabove, there had been several applications by the City to the County Court for more area of the Square to be given over to be used as a public street. At the Jan. term 1937 of the Quarterly County Court, a resolution was adopted which contained the following language:

''Whereas, the City of Murfreesboro proposes to widen its streets surrounding the Courthouse grounds if the County of Rutherford will grant a portion of said grounds for said purposes; therefore, Be it Resolved by the Quarterly County Court of Rutherford County that permission is hereby given the City of Murfreesboro to utilize fifteen (15)

feet on the West side of the Courthouse grounds paralleling and adjacent to the curb; fifteen (15) feet on the East side of the said grounds, paralleling and adjacent to the curb; seven and one-half (7½) feet on the North side of said grounds, paralleling and adjacent to the curb; and seven and one-half (7½) feet on the South side, paralleling and adjacent to the curb.''

As is pointed out by counsel for complainant, the foregoing resolution fixed the exact amount of ground to be turned over to the City for use as a street or thoroughfare.

On June 9, 1938 the City Council of Murfreesboro passed a resolution which was in part as follows:

''Mr. Hardy Moore, of the WPA, reported to the Council that the WPA had approved the project of enlarging the Square, and would furnish free of charge the unskilled labor. The Mayor appointed a Committee to investigate some measurements and ascertain exact amount of area of Courthouse yard that could be secured for enlargement, and approximate cost of materials, and to report back to the Council.''

On June 16, 1938, the Committee reported and the Council voted to proceed with the project with the help of WPA funds.

On June 23, 1938, the City Council took further action on the project as follows:

''A resolution was presented to borrow money from a designated sinking fund of the City for the project, 'to cut down the size of the courthouse yard

and to enlarge the size of the traveled portion of the Public Square.' "

In pursuance of the foregoing resolutions by the County and City it is shown that the City, with the aid of WPA, in 1938, built a permanent six-foot concrete sidewalk, about four inches above the surface of the street, on the lines established pursuant to the resolutions hereinabove quoted. Said concrete sidewalk was located inside of the line so established. In other words, the outside perimeter of said sidewalk was on the line, the inside of same being six feet inside the line established by the County and City in said proceedings.

It is shown that said sidewalk was so constructed that vehicles could cross same at two points or openings, one on the East and one on the West, thus giving access to the circle inside of same if and when same was authorized.

In 1946 the City, without consulting the County authorities, erected parking meters around the outside edge of this concrete sidewalk. However, counsel for complainant concedes that the part of the Public Square which is used as a public street is under the general supervision and control of the City, and, therefore, makes no question as to the City's right to construct and maintain parking meters on the outside edge of said sidewalk.

In 1949 Chap. 777 Private Acts of 1949 was passed giving to the Quarterly County Court of Rutherford County, the right to install and operate parking meters on its property around the Court House. Following the passage of said Act, the Quarterly County Court of Rutherford County appointed a committee to confer with,

and attempt to work out with, the City of Murfreesboro, a settlement of a dispute that arose about parking meters on the square placed there by the City, but in spite of many conferences, the City and County authorities could reach no agreement.

In the meantime, the County permitted vehicles to go into the Court House yard through the openings in the 6 foot sidewalk above described, and to park therein. No action by the Quarterly County Court was taken to this effect, but the County officials at the Court House acquiesced in such a use by owners of cars.

In 1953 the City of Murfreesboro, without obtaining permission or authority from the County, and while the Committee appointed by the County Court was trying to bring about some settlement between the County and the City, proceeded to erect two additional lines of parking meters, one on the inside of the six-foot sidewalk, and the other on an eighteen inch strip of concrete that the County had constructed around the inside of the "inner circle", said meters thus being located around the inside and outside perimeters of the "inner circle" enclosed by the six-foot sidewalk hereinabove described.

The result of this action by the City, and the failure to agree with the County with respect to said meters, brought about the lawsuit before us.

## V.

The first question for consideration is as to the title to the property in question.

By Chapter 33 of the Acts of 1811, (Exb. 4 to John D. Kerr) it is shown that commissioners were appointed to establish a County Seat for Rutherford County and

they were authorized to acquire sixty acres of land near the center of said county and to lay off such land into a town, to be known as Cannonsburgh, reserving near the centre thereof, a public square of two acres, on which the Court House and stocks were to be built; likewise reserving such other lots as they thought proper, for the purpose of having a jail thereon, for the use of the county of Rutherford.

Said Act directed that said commissioners take title to such land in fee simple to themselves and their successors in office, which they did.

By Chapter 104 of the Acts of 1811 the name of the County Seat was changed from Cannonsburgh to Murfreesboro. By Chapter 72 Acts 1815 it appears that the town Commissioners were directed to "enclose by posts and railings, or otherwise, such part of the Public Square, including the Court House and well, as they may deem necessary and to cause a sidewalk to be laid off on each side of the Public Square and to lay off on the North and South side of said Square the same number of feet in width as public streets on the East and West side thereof."

With respect to the ownership of county buildings and property, the law in Tenn. is as follows:

T. C. A. sec. 5-701—"*County powers over property.*—Each county may acquire and hold property for county purposes, and make all contracts necessary or expedient for the management, control, and improvement thereof, and for the better exercise of its civil and political powers; and may make any order for the disposition of its property."

Sec. 5-702—*"Grants for use of county.*—All deeds, conveyances, or grants which have been, or may be, made to any officer or person for the use or benefit of the county, vest in such county the title as fully as if made to such county by name; but such conveyances hereafter shall be made to the county.''

Sec. 5-705—*"Buildings in county town.* — The courthouse, jail, and all county buildings provided by the county for the county officers, shall be erected within the limits of the county town.''

Sec. 5-706—*"County expense—Tax levy.* — The county buildings are to be erected and kept in order and repair at the expense of the county, under the direction of the county court, and it may levy a special tax for the purpose.''

Also observe Sec. 5-103, T. C. A. which provides:

*"Corporate capacity.*—Every county is a corporation, and the justices in the county court assembled are the representatives of the county, and authorized to act for it.''

■ Referring particularly to Sec. 5-702, T. C. A. we see that all conveyances or grants which were heretofore made to any officer or person for the use and benefit of the County vested the title in the County as fully as if it had been made to the County by name.

■ Thus the title to the property on which the Court House at Murfreesboro is located, and the Court House yard used and useful for the purposes for which such yards are generally used, is vested in the County of Rutherford.

In so far as regulation of traffic and the control of the travelled portion of the square which is used as a public street are concerned, the right of the city to control same is not disputed. See Southern R. Co. v. State, 130 Tenn. 261, 169 S. W. 1173, L. R. A. 1915B, 766.

In Henry v. Grainger County, 154 Tenn. 576 at pages 580-581, 290 S. W. (2d) at page 3, in an opinion by Mr. Chief Justice Green, among other things it was said:

"County buildings and their equipment are public property held by the county, but in trust for the public use. 7 R. C. L., 948; State [ex rel. Scott] v. Hart, 144 Ind. 107, 43 N. E. 7, 33 L. R. A. 118, and note; [Town of] Decatur v. DeKalb County, 130 Ga. [483] 488, 61 S. E. 23.

" 'Any rule other than the one we declare would lead to entanglements and abuses against which the public should be protected as a matter of public policy. * * *

"The same rule should be applied to the disposition of the courthouse yard, in our opinion, as to the space within the courthouse. In this climate, for the greater part of the year, the yards around our courthouses are not less used nor less necessary than the interior of such buildings.

"Speaking of the importance of preserving for the public use the park surrounding the courthouse a learned judge of a neighboring state said:

" 'Upon its green grass, under the shade of its trees, our people have thus met time out of mind and rested during the sessions of the courts. Suitors,

jurors, witnesses, instead of being tied down to benches in the hot, crowded courtroom, repair there to await the crier's call. There too the children play. It is a park for the poor who have not the rich man's lawn. And where shall be held, in the hot summer, those great meetings of the people in the political canvass to hear the orators? How valuable within the experience of all of us is the courthouse ground for this important purpose.' Keatley v. County Court of Summers County, 70 W. Va. 267, 73 S. E. 706, Ann. Cas. 1913E, 523.

"* * * One reason for locating court buildings in ample grounds is to remove them from the noise of the streets to the end that the deliberations of the courts may be less disturbed."

█ Under the foregoing statutes and decisions, it is our opinion that the property used as a Court House yard is property of the County with title vested in said County, and, in the instant case, this includes the disputed "inner circle" or plat described in the record.

## VI.

It is insisted by the defendant City that the fact that owners of vehicles were permitted to drive into the "inner circle" and to park thereon, plus the fact that the City, of its own volition, paved said area and installed parking meters therein, in 1953, amounted to a dedication by implication of this area for street purposes giving the City of Murfreesboro exclusive jurisdiction over same.

In other words, it is insisted that the County lost control over this area when it permitted vehicles to drive

in and park on same and that this amounted to dedication by implication of said area for use as a street.

Callahan v. Town of Middleton, 41 Tenn. App. 21, 292, S. W. (2d) 501, is discussed in Vol. 24 of Tenn. Law Rev. Spring Issue 1957, at page 1052 et seq. in a very enlightening article dealing with rights by adverse possession, prescription or dedication.

In the opinion in Callahan v. Town of Middleton, it is pointed out that a municipality has control over its streets within the corporate limits and neither the County Court nor other authorities can interfere with the municipality in exercise of this control, citing Southern R. Co. v. State, 130 Tenn. 261, 169 S. W. 1173, L. R. A. 1915B, 766, and other cases. However, it is pointed out that the cases definitely hold that dedication will not be inferred from mere permissive use of unenclosed land. It is also pointed out in the discussion in Tenn. Law Review, supra, that "Although it is recognized that a use will not necessarily be permissive merely because the owner does not object, still mere permissive use alone will never suffice." In Reider v. Orme, 17 Tenn. App. 497, 68 S. W. (2d) 960 it was held that to establish dedication by implication requires proof of facts showing *unequivocally* that the owner intended to part permanently with his property and vest it in the public, and that there is no other reasonable explanation of his conduct.

To the same effect is McKinney v. Duncan, 121 Tenn. 265, 118 S. W. 683, 684, where it was held:

"To establish [dedication] by implication, there must be proof of facts from which it positively and unequivocally. appears that the owner intended to

permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct. In other words, dedication is a question of intention, and the intent must be clearly and satisfactorily proven.''

■ Again in Nashville Trust Co. v. Evans, 30 Tenn. App. 415, 206 S. W. (2d) 911, it was held that in order to establish dedication of a road for public use by implication there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct, the question being one of intent. It is also held in said case that permissive use of a road by the public will never establish dedication.

To the same effect is the decision in Blakemore v. Matthews, 154 Tenn. 334, 285 S. W. 567, and many other Tenn. cases.

In the case at bar it is seen that while there was a resolution by the Quarterly County Court in 1938 which, in effect, dedicated that part of the Court House yard which was subsequently enclosed by a sidewalk, six feet in width, around said area, leaving outside all of the Court House yard that the Quarterly County Court then considered proper to allow to be taken over for a public street, on the other hand, there was never any dedication, by resolution or other action on the part of the Quarterly County Court, of the area which is in dispute here, and which is enclosed within said six foot sidewalk and called the ''inner circle'' in the pleadings and record.

Thus, if a dedication for use as a parking area or as a street is to be found in this instance, it must be by implication, and we think, under the authorities as applied to the facts here, there was no dedication by implication but merely a permissive use by County officials in the Court House at the time.

Furthermore, the action of the Quarterly County Court in appointing a committee to try to work out a solution of the problem, and the dispute between the City and the County, demonstrates that there was never any intention on the part of the Quarterly County Court to dedicate the disputed area and turn it over to the City for use as a public street.

Under our authorities it is doubtful that acquiescence or agreement on the part of individual County officials, other than the Quarterly County Court, could have resulted in a dedication.

In Cannon County v. McConnell, 152 Tenn. 555, at pages 560-561, 280 S. W. 24 at page 25, it was said:

"With reference to the nature of a county, this court, in Ledbetter v. Turnpike Co., 110 Tenn. [92] 94, 73 S. W. 117, said:

" 'Counties in Tennessee are corporations, and the justices of the peace, assembled in county court, are their representatives, and authorized to act for them. They are vested with the power to acquire property for county purposes, and the grants and conveyances therefor are required to be made to the county acquiring the same. * * *

" 'The county courts, composed of the justices of the peace, the representatives and authorized agents

of the counties, are given exclusive control of the establishment and supervision of roads and ferries. Shannon's Code, sec. 6038.

" 'Public bridges are included in the general term "roads and highways", Shannon's Code sec. 70.

" 'But public streets in incorporated towns and cities are not under the control of the county court. White's Creek Turnpike Co. v. Marshall, 2 Baxt. [104] 118.' "

Thus, it seems that the question really reduces itself to a proposition of whether or not, by permitting automobiles to go into the area in question here, said area was, thereby, made a public street so as to come within the jurisdiction of the City and exclude the jurisdiction of the County.

■ Under a number of authorities in Tennessee, it is generally held that the Quarterly County Court cannot delegate its authority in such matters as the appropriation of money, the disposition of property etc. For instance in Hickman County v. Nashville Bridge Co., 6 Cir., 66 F. (2d) 174, it was held that the vesting of power in the County Courts to enter into contracts for the construction of bridges did not authorize delegation of such power to a committee and further that, generally, where a governing body of a county is given authority to exercise corporate powers, such powers cannot be delegated, but only ministerial acts of carrying out the details of such matters may be delegated.

■ In Evans v. Shields, 40 Tenn. 70, it was held that the County could not devolve the power and trust confided in it on behalf of the public to private individuals.

It was said that it could not leave the important matter of the establishment and regulation of the public roads to be controlled by the interests, prejudices, or resentments of private individuals.

Thus, it is seen that the acquiescence on the part of certain County officials around the Court House, in the parking of automobiles on the area belonging to the County, would not be sufficient to constitute a dedication. See also Maury County v. Lewis County, 31 Tenn. 236; Winston v. Tennessee & P. R. Co., 60 Tenn. 60; and State ex rel. Thompson v. Read, 152 Tenn. 442, 278 S. W. 71 and many other cases.

In 16 Am. Jur. under the title "Dedication", at page 356, it is said that a state or political subdivision thereof may dedicate lands owned by them, but land thus owned by a state or subdivision cannot be changed from one particular public use to another except by strictly following the procedures laid out by law. At page 394 it is said, that although there are comparatively few cases on the subject, it appears to be the rule that land adjoining a street is not dedicated by implication to the public by the fact that the space is used by the public as part of the street without objection from the owner. It is necessary for the owner to do some act from which can be drawn a positive intent to dedicate the land to the public before same is effective. And at page 417, it is said, that *in all cases, the burden of proof is on the party asserting a dedication.*

We think the circumstances surrounding the use of the "inner circle" which is in dispute here, is such as that they negative the idea of a permanent dedication by the

County, of this property to be used either as parking space or as a public street.

We do not agree with the conclusion of the Chancellor that this area was dedicated by the County or that it was used as a public street. It is of such common experience and knowledge that the Court judicially knows that, under the pressure of the great number of automobiles in our towns and cities, parking space for said cars is at a premium. Many off-street parking areas are provided, some publicly owned and many privately owned. The disputed **area is comparable** to those areas adjacent to the streets belonging to Super Markets and other places of business, where the public drives in day after day and parks. It might be as plausibly argued that this would amount to a dedication to public use, as to say that, because the officials in the Court House permitted people to use a part of the Square belonging to the County as an off-street parking lot, it would, thus, become a public street.

We think the record demonstrates that the use of this area for parking purposes was purely permissive and that the County, through its Quarterly Court, still maintained ownership and control thereof, and while it permitted parking therein as a temporary expedient until such time as the County might desire said space for expanding its buildings or offices, or for other use appropriate for county purposes in conjunction with the Court House, there never was an intention on the part of the members of the County Court to permit the City to take over this area for a public street and control it to the exclusion of the County.

The following facts seem decisive to us on the question of dedication by intention, or by implication, of the dis-

puted area for use as a public street so as to give the City control and jurisdiction over it. .

1. The appropriation by the County in 1938 of 15 feet on the East and West sides and 7½ feet on the North and South sides of the Court House yard, for use as a public street and the fixing of the boundaries accordingly.

2. The acceptance by the City of these boundaries and the building of the 6 foot sidewalk by the City on the lines thus established.

3. The openings or curbings built in this sidewalk on the East and West sides, making the "inner circle" accessible to vehicles, could not have been understood at that time as surrendering this area to the City for street purposes, since it was to preserve same to the County that the agreement and settlement was reached. Said openings could have been made to allow coal and other things to be delivered to the Court House or for other necessary purposes other than for access to a parking space which was later allowed as an incidental use.

4. Prior to, and at the very time the City moved in and paved the "inner circle" and installed parking meters in 1953, a committee of the Quarterly County Court had been appointed for the purpose, and was negotiating with the City authorities in an effort to settle the questions affecting the use and control of said area. Thus, it is clear and certain that the Quarterly County Court had not intentionally surrendered its control to the City.

Since dedication is largely a matter of intention it follows that there was no such dedication as will support defendant's claim to the exclusion of the County's rights.

It results that we find (1) that the title to said property is vested in the County of Rutherford (2) that there was no dedication of said area described in the pleadings and proof as the "inner circle", as a public street, (3) there was no dedication of said area so as to give the public or the City of Murfreesboro the right to use same for its own purposes to the exclusion of the County through its constituted authority, to wit, the Quarterly County Court, (4) the use by the City of said area and the erection of parking meters thereon was permissive at best and the City did not acquire any rights therein as against the County, (5) the Quarterly County Court, as an incident to the County's title and ownership, has the right to require the city to remove said parking meters, and/or to prohibit parking in that area by proper resolution and action.

Under the resolution authorizing the bringing of the suit against the City of Murfreesboro, the complainants were not authorized to sue for an accounting for the money had and received by the City through the parking meters on the area in question. Since the use of said area was permissive, the collection by the City of monies from said meters was likewise within its permission.

Counsel for complainant in argument before the bar of this Court, and in the briefs, admit and concede that the City has the right to maintain parking meters around the perimeter of the six-foot sidewalk on the outside of the "inner circle" and we concur in this conclusion.

■ The six-foot sidewalk around the Court House, which was built pursuant to resolutions of the County Court and the City Council in 1938, and around the outside of which parking meters were later installed by the

City, represents the line inside of which belongs to and is under control of the County of Rutherford. Said sidewalk and the area outside of same is a public street and, therefore, under exclusive control of the City of Murfreesboro.

The pleadings do not present the questions of the constitutionality of Chap. 777 Private Acts of 1949 and the respective rights of the City and County thereunder, hence, we pretermit same in this opinion.

It results that the decree of the Chancellor, insofar as it differs from the foregoing findings, is reversed and the appellee, the City of Murfreesboro, is taxed with the costs of this cause.

Reversed.

Felts and Hickerson, JJ., concur.