Rupert W. KNIERIM et al., Appellants,

v.

Robert H. LEATHERWOOD et al., Appellees.

Supreme Court of Tennessee.

Oct. 18, 1976.

Thomas Privette, Jr., Knoxville, for appellants.

Richard Stair, Sr., Ronald L. Grimm, Ambrose, Wilson, Lockridge & Grimm, Knoxville, for appellees.

## OPINION

HENRY, Justice.

This civil action was instituted by certain adjoining and abutting property owners, and others, seeking to enjoin the obstruction of a roadway and a declaration of its existence as a public right-of-way.

The Chancellor sustained a motion to dismiss and this appeal ensued.

### I

It is first necessary that we address the pleadings and the issues they posed in the trial court. Omitting for the time being the allegations of the complaint, we first note that the defendant, Arnwine, answered fully and in great detail, appending to her Answer certain maps and plats. The defendants, Leatherwood, "pursuant to Rule 9.01 of the Tennessee Rules of Civil Procedure", filed a motion to dismiss for want of standing. On the same date the defendant, Arnwine, with leave of the court, amended her answer so as to interpose a similar defense.

The order of the Chancellor sustaining the motion recites that the cause was heard upon "the Motion to Dismiss filed by the defendants, Leatherwood, joined in by defendant, Mary M. Arnwine, or in the alternative, on her motion for a judgment on the pleadings . . .".

We address first the character of the motion filed by the defendants, Leatherwood. While facially it purports to be filed

pursuant to Rule 9.01, Tenn.R.Civ.P., actually Rule 9 is not a motion rule. As indicated in the Committee Comment, Rule 9 "sets forth rules governing the pleading of several specific matters about which questions might arise." Rule 9.01 relates to capacity to sue. It merely requires that when a party desires to raise an issue as to the capacity of any party to sue "he shall do so by specific negative averment."

■ If a party defendant conceives that the plaintiff does not have capacity, authority, or legal existence, he may plead this defect in his responsive pleading under Rule 9.01 "by specific negative averment." It is not classified, however, as an affirmative defense under Rule 8.03.

■ If he elects to proceed by motion, he has three options. He may (1) move to dismiss for failure to state a claim upon which relief may be granted, under Rule 12.02(6), in those cases where the issue is framed by the pleadings; or (2) move to strike under Rule 12.06; or (3) move for a judgment on the pleadings under Rule 12.-03.

■ Actually, Rule 9.01 has no application in the instant case. The *capacity* to sue is something entirely different from *standing* to sue. The former is recognized specifically in the Rules of Civil Procedure; the latter is controlled by case law, with no reference being made thereto in the Rules.[1]

■ *Capacity,* as used in Rule 9.01, relates to a party's personal or official right to litigate the issues presented by the pleadings; is governed by Rules 17.02 and 17.03; and is not dependent upon the character of the claim.

■■ *Standing* is a judge-made doctrine which has no per se recognition in the rules. It is used to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action. An issue of standing is therefore

raised by a specific denial or defense (but not an affirmative defense under Rule 8.03) in the answer or responsive pleading, or by a motion to dismiss under Rule 12.02(6) or in proper cases by a motion for judgment on the pleadings under Rule 12.03, or motion to strike under Rule 12.06.

■ Where made by Rule 12.02(6) motion the issue must be framed on the face of the pleadings. If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56. This is also true, with respect to a motion for judgment on the pleadings under Rule 12.03.

## II

We now analyze the pleading situation in the instant case.

The Leatherwoods filed a procedurally good and sufficient motion to dismiss, which we treat as being made under Rule 12.02(6).

■ Arnwine filed no such motion. The record merely shows, from the Chancellor's decree, that the Leatherwood motion was "joined in by defendant, Mary M. Arnwine." Nowhere in the Tennessee Rules of Civil Procedure are oral motions sanctioned nor is the practice of "joining in" recognized. To the contrary, the Motion Rule (12.02), specifically requires that defenses not asserted in the responsive pleading be "made by motion in writing."

We, therefore, hold that the defendant, Mary M. Arnwine, made no motion to dismiss.

■ When a party orally "joins in" on another party's motion, good practice demands that the motion be reduced to writing or that a simple written statement be lodged with the clerk evidencing such fact, and in either event the resulting pleading must be filed forthwith and be made a part of the record.[2]

---

1. The Committee Comment following Sec. 17.-02 is imprecise.
2. This opinion addresses only formal motions, or those that are in the nature of pleadings.

Informal motions made during trial proceedings are not required to be "in writing" although good practice may indicate the desirability of reducing some of these to writing.

■ We are bound by the record on appellate review and will not note a motion not reflected in the transcript.

The Chancellor's decree also recites that the matter was considered "in the alternative on [Arnwine's] motion for judgment on the pleadings." Again, the technical record contains no such motion.

The result is that all we have for determination is the sufficiency of the Leatherwood Motion to Dismiss. This entails an analysis of the Complaint.

### III

Six married couples who own or rent property in the Glenridge Gardens Subdivision fronting upon Peachtree Road, and another couple who own property in the vicinity of this subdivision, instituted this action to enjoin defendants from blocking or obstructing this road or street, and for a declaration of its existence as a "public right-of-way."

The Complaint proceeds upon various theories. First it is insisted by the abutting plaintiffs that a plat of the Glenridge Gardens Subdivision was recorded in the Register's Office of Knox County and their respective conveyances, or those of their lessors, made apt reference to this plat and/or described their property as "lying on Peachtree Road." The property of the abutting plaintiffs is on one side of Peachtree Road and that owned by defendants is on the other.

It is alleged by the plaintiffs Knierim that they are the owners of certain property adjoining the subdivision. We infer that this property does not abut on Peachtree Road. Nothing in the complaint or the exhibited plat would so indicate. It is alleged, however, that Peachtree Road affords their "only means of ingress and egress from the nearest public road" and that "said right-of-way has been so used by said parties or their immediate and remote grantors for many years, thereby becoming a public right-of-way by prescription in addition to the previous grant."

Plaintiffs Knierim allege that their property "does not front on any public road, and the only means of ingress and egress thereto is by . . . Peachtree Road." They insist that at the time they acquired their property in 1973, Peachtree Road was a well developed right-of-way in use by the adjoining property owners generally and they were not aware that anyone would attempt to prevent their use thereof. They insist that they used the road for about two years when the defendants, Leatherwood, notified them to discontinue doing so, asserting that its use was limited to the property located on the south side of the road.

The Knierims disregarded this notice and as a result the Leatherwoods blocked the road by parking their cars on it. They allege other acts of hostility committed by the Leatherwoods.

All plaintiffs assert open and adverse use for many years, under a claim of right.

Knierim and wife pray for a restraining order enjoining the blockage of the road and for damages.

All plaintiffs pray for a declaration of "the existence of a public right-of-way as shown on the recorded map of Glenridge Gardens Subdivision" and all pray for general relief.

Giving the complaint a liberal, and perhaps loose, construction, the Knierims seek to enjoin the obstruction of a public road; and all parties plaintiff seek to have Peachtree Road declared a public road. The complaint viewed in a most liberal light might be construed as one to protect an easement or way, acquired by dedication, acceptance and user, or to enforce their rights as abutting owners in a public road or to an easement.

### IV

We dispose first of the complaint insofar as it seeks to restrain the obstruction of a public road. Indulging every intendment in favor of the averments of the complaint and assuming that Peachtree Road is a way

open to all the people without distinction, for passage and repassage at their pleasure [See *Sumner County v. Interurban Transp. Co.*, 141 Tenn. 493, 213 S.W. 412 (1918)], plaintiffs Knierim run afoul of the rule announced in *Ledbetter v. Turnpike Co.*, 110 Tenn. 92, 73 S.W. 117 (1902), that the ownership and title to public roads

> [i]s vested in the county in its corporate capacity; and, under the elementary rules of pleading [and practice], suits brought to protect such roads and bridges, and enforce the rights of the county therein . . . must be brought and prosecuted in the name of the county. 110 Tenn. at 96, 73 S.W. at 118.

*Ledbetter v. Turnpike Co.* was decided three quarters of a century ago. To the extent of its requirements that suits brought to protect public roads must be brought in the name of the county, or the quarterly court, it stands in conflict with the rationale, reasoning and results of countless subsequent cases decided by our courts. Moreover, it does violence to recognized property rights of abutting owners. It has not been followed in a single reported case and has been cited in but few, primarily on the proposition of the nature and authority of counties.

For example, it was cited in *Montgomery County v. Turnpike Co.*, 120 Tenn. 76, 109 S.W. 1152 (1907) which was a suit by Montgomery County to enjoin the collection of toll; in *Sumner County v. Interurban Co.*, 141 Tenn. 493, 213 S.W. 412 (1918), a suit to enjoin a transportation company from using county roads; in *Cannon County v. McConnell*, 152 Tenn. 555, 280 S.W. 24 (1925), where the controversy was over the ownership of a county road fund in a defunct bank; in *Boshears v. Foster*, 154 Tenn. 494, 290 S.W. 287 (1926), a suit to invalidate bridge warrants; in *Mooney, et al. v. Phillips, et al.*, 173 Tenn. 398, 118 S.W.2d 224 (1938), involving the use of voting machines; in *Jackson v. Hutton*, 15 Tenn.App. 281 (1932), on the proposition of the power of the county judge and road commissioner

to execute a deed for an abandoned road; and in *Rutherford County v. City of Murfreesboro*, 43 Tenn.App. 489, 309 S.W.2d 778 (1957), which involved parking meters on the public square in Murfreesboro. Finally, it was cited, but not applied (on basis of waiver), in *Reeves v. Perkins*, 509 S.W.2d 233 (Tenn.App.1973).

We overrule so much of *Ledbetter Turnpike Company* as holds that all suits brought to protect public roads must be brought in the name of the county, as being out of harmony with better established law announced, or followed in subsequent cases, and as having only limited precedential value, in this regard. We approve and reiterate *Ledbetter* to the extent of those cases wherein the complaining party has no special, pecuniary or proprietary interest in a public road. In such cases the protection of the public interest is the sole prerogative of the county.

We think it both reasonable and clear that a private citizen may sue to enjoin the maintenance of an obstruction on a public highway where he has sustained special injury or damage. *Day-Evans Iron Wks. v. L & N.R.R. Co.*, 161 Tenn. 649, 32 S.W.2d 1038 (1930). See also *Maxwell v. Lax*, 40 Tenn.App. 461, 292 S.W.2d 223 (1954).

An abutting owner has a greater interest than the general public, *Thornton v. Connelly*, 15 Tenn.App. 436 (1932) and has an easement of access over the road to his premises, even after a public road is abandoned, *Jackson v. Hutton*, 15 Tenn. App. 281 (1932).

In *Current, et al., v. Stevenson, et al.*, 173 Tenn. 250, 116 S.W.2d 1026 (1938), this Court, speaking through the late Justice McKinney, quoted with approval from 29 C.J., 547[3] as follows:

> An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property con-

---

**3.** 39 C.J.S. Highways § 141 contains the same language.

tiguous to the highway, and which are not common to the public generally, and this regardless of whether the fee of the highway is in him or not. . . . They include the easement of access . . . . 173 Tenn. at 254–55, 116 S.W.2d at 1028.

Again quoting from an earlier Tennessee case, the *Current* Court declared:

> But the owners of lots bordering upon a public street, have an easement of way in the street, in addition to the use of it in common with the people generally. This additional right of way, is private property . . . . 173 Tenn. at 255, 116 S.W.2d at 1028.

██ Moreover, our courts have long held that "persons who buy lots according to plats or plans whereon streets are marked or exist acquire irrevocable rights to such streets." *Wilson v. Acree*, 97 Tenn. 378, 381, 37 S.W. 90, 91 (1896). See also *Bunns v. Walkem Development Co.*, 53 Tenn.App. 680, 385 S.W.2d 917 (1964), and *Moore v. Queener*, 62 Tenn.App. 490, 464 S.W.2d 296 (1970).

But his easement is limited to the street or way upon which his lot is situated and in such other streets or ways as are necessary or convenient to his ingress or egress. *State v. Hamilton*, 109 Tenn. 276, 70 S.W. 619 (1902). See also *Byington v. Bass*, 11 Tenn.App. 569 (1930).

## V

██ We, therefore hold that the complaint contains sufficient allegations of fact to make out a prima facie case for relief. There issues must be fully determined and are not necessarily limited to those dealt with in this opinion. On remand, and after the Leatherwoods shall have filed their responsive pleading, the Court's consideration should include the nature and character of Peachtree Road and the interests of the respective parties therein; the validity of the Knierim claim of a way of necessity over Peachtree Road, and their claim for damages; the right of the parties plaintiff to injunctive relief, and such other issues as may be developed by the pleadings and proof.

In fairness to the Chancellor, it should be noted that he was bound by *Ledbetter*.

Reversed and Remanded.

All concur.