# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs August 1, 2018

## SIMA ARYAN v. NICOLAS ARYAN

**Appeal from the Circuit Court for Davidson County**
**No. 11D-2422     Phillip R. Robinson, Judge**

_____

### No. M2017-02199-COA-R3-CV

_____

In this post-divorce proceeding, the Mother appeals the trial court's rulings on several motions; finding no reversible error, we affirm the judgment in all respects, except the award of child support, which is not final and is subject to further review by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KENNY W. ARMSTRONG, J., joined.

Sima Aryan, Brentwood, Tennessee, Pro Se, Appellant.

Nicholas Aryan, Antioch, Tennessee, Pro Se, Appellee.

### MEMORANDUM OPINION[1]

The parties to this appeal were divorced on the grounds of irreconcilable differences by decree entered April 10, 2012; the final decree approved and adopted the parties' marital dissolution agreement and agreed permanent parenting plan. The parties are parents of a boy and a girl, and Mother, Appellant herein, was designated primary residential parent, with 266 days of residential parenting time.[2] The Father of the

_____

[1] Rule 10 of the Rules of the Court of Appeals states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] The parties' son reached the age of majority while the case has been pending.

children, who has not participated in this appeal, received residential parenting time every other weekend and on Wednesday evenings; Father was ordered to pay child support of $865.00 per month based on his gross monthly income of $2,600.00 and Mother's gross monthly income of $3,333.33. Since the entry of the final decree, the parties have been involved in continuous litigation, the majority of which is related to modifications of parenting time and child support and allegations of contemptuous conduct. On August 29 and 30 and September 17, 2017, the trial court held an evidentiary hearing on various motions, and on October 18, it entered an order disposing of all pending matters. This appeal ensued.

Mother has raised six issues for review, asserting that the court erred in granting Father parenting time with his daughter; adding Mother's new husband as a party to the action; dismissing her efforts to have Father held in contempt for failing to pay child support and failing to provide health insurance for the children; ordering Mother to pay $15,000 of the attorney fees Father incurred in these proceedings; and dismissing what Mother contends are Father's violations of Rule 11 of the Tennessee Rule of Civil Procedure. She also asserts that the trial court "has shown a constant pattern of prejudice, bias, and harassment" toward her and her new husband. We address each matter in the order presented in her brief.

## 1. Father's Parenting Time

In February 2015, Mother filed a motion to modify the parenting plan by requiring that Father's parenting time with his daughter be supervised, alleging that Father was showering with her and requiring her to sleep in his bed with him. The court issued a temporary restraining order and entered an agreed order on March 16, 2015, enjoining Father from exercising parenting time pending an investigation by the Department of Children's Services and further order of the court. Mother asserts in her brief that the trial court "overlooked and dismissed" these allegations and "erred in immediately establishing parenting time with the minor daughter."

Contrary to Mother's argument, the trial court in its order discussed at length the testimony adduced at the hearing relative to this issue, including testimony from a licensed counselor who had counseled with Father each week for two years, a person who runs an anger management and domestic violence program and worked with Father in a 26 week anger management program, and the court-appointed therapist for the children; none of these witnesses had any concerns regarding Father exercising parenting time with his daughter. The court also found that a 15-year friend of Father, whose testimony the court found to be "credible and compelling," had "no concerns regarding the Father's contact with his children." The court held that there was a material change in circumstances based on the behavior of both parents, and granted Father additional parenting time, including alternating holiday parenting time and two one-week periods of

parenting time in the summer. Significantly, the court ordered that Father and the daughter remain in counseling as recommended by the therapist.

We disagree with Mother's argument that the court did not conduct a best interest analysis after finding a material change of circumstances. To the contrary, the court thoroughly analyzed the evidence, particularly the opinions of the counselors and therapist and determined that there was no impediment to Father having parenting time with the daughter; indeed, the court determined that, under the circumstances presented, making Father the primary residential parent was not in the daughter's best interest.

"A trial court's determinations of whether a material change in circumstances has occurred and where the best interests of the child lie are factual questions." *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). We review the trial court's factual findings *de novo* with a presumption that they are correct unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013). Evidence preponderates against the trial court's findings of fact when it supports another finding of fact with greater convincing effect. *See Walker v. Sidney Gilreath & Associates*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). "We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or the trial court has committed an error of law affecting the outcome of the case." *Boyer v. Heimermann*, 238 S.W.3d 249, 254-55 (Tenn. Ct. App. 2007).

The court did a thorough analysis of the evidence pertinent to this issue and, while Mother disagrees with the conclusion, the evidence to which she cites does not preponderate against the court's findings. The testimony of Ms. Vaughn, Dr. Dennis, and Dr. Woodson establishes that Father fully understands the reasons for and inappropriateness of his prior behavior, and that, through counseling and participation in therapeutic programs, he has successfully addressed those reasons; this evidence supports the holding that modifying the plan to allow Father more parenting time was in the daughter's best interest and in the interest of their relationship.

### 2. Child Support

Apart from three references to cases, Mother's entire argument as to this issue states:

The Trial court modified a child support order without just cause by modifying the T. R. 108 Order entered January 16, 2014 where the Trial Court ordered in part "***The respondent was the recipient of lottery winnings, which when amortized over the eight remaining years that the respondent will pay child support,***". Mr. Aryan is and has been in willful contempt of the court ordered child support from day 1. There have been several motions and petitions to the Trial Court for relief concerning the

3

child support obligation, however the Trial Court will not uphold its orders and allows Mr. Aryan to be in contempt of court orders.

(Emphasis in original.)

Mother accurately states elsewhere in her brief that "the record for child support is convoluted at best"; unfortunately, her brief does not provide much assistance in addressing the issue she presents. In the order entered October 18, 2017, the trial court did not specifically state that it was considering any pleading involving contempt. In reviewing the docket entries contained in the record on appeal, the last documents that appear to raise an issue of child support or contempt prior to the October 18, 2017 order are: a Petition For Civil Contempt For Failure to Pay Child Support As Ordered, filed by Mother on October 15, 2015, in which she complains of Father's failure to comply with a January 14, 2014 order which increased his monthly support obligation to $1,032.00; an order setting a hearing on the petition for November 12, 2015; and an "Order Resolving Finding Of Civil Contempt" entered January 13, 2016. For a reason not apparent from the record, however, the January 13, 2016 order addresses a court proceeding on August 20, 2015, relating to Father's failure to return jewelry to Wife as he had been previously ordered to do, and recites that Father deposited $25,950, "which constituted the values of the remaining missing items" into the Office of the Circuit Court Clerk, "to be held in an interest-bearing account pending the resolution of an on-going real estate dispute related to the marital residence currently pending." The order concludes with the court holding that Father "has purged himself of his contemptuous behavior."

In the October 18, 2017 order, the court addresses child support, finding that both Mother and Father are voluntarily underemployed and imputing monthly income of $3,333 to Mother and $2,600 to Father. The court found that a significant variance existed between "the amount of child support the Father was previously paying and what he should be paying based on the above figures" and decreased Father's support to $533.[3] The court also ordered that Father's counsel prepare a permanent parenting plan and child support worksheet consistent with the court's findings, which was to be reviewed at a hearing on January 4, 2018. Mother filed her notice of appeal on November 8, 2017, and there is no indication in the record that the January 4, 2018 hearing was held or, if so, the results of same.

From the foregoing, it is apparent that there is no order relating to child support for our review other than the October 18, 2017 Order which, by its terms, was not a final

---

[3] In this regard, the court apparently does not include income that Father may have been receiving as a result of winning a lottery which, the court found in the January 16, 2014 order would pay him $7,812.50 per month through the years he would be paying support.

4

order with respect to the issue of child support; consequently, there is no justiciable issue for us to review.[4]

### 3. Joinder of Jake Seipel to this Action

In the October 18, 2017 Order, in discussing the behavior of both parties that led the court to hold that there was a material change of circumstance, the court made note of several incidents involving Mother's new husband, Jake Seipel, which led the court to order injunctive relief. To bind Mr. Seipel to the order, the court stated that "IT IS FURTHER ORDERED that the Mother's new husband and children's stepfather, Jake Seipel, is hereby made a party to this action for the purpose of issuing the following Restraining Orders"; the court then proceeded to enjoin Mother and Mr. Seipel in several respects.[5] On appeal, Mother asserts that the court was "without jurisdiction to assert authority over [Mr. Seipel] without due process" and that by joining him in this fashion the court "is acting with bias and prejudice towards a non-party with malicious intent to defame Mr. Seipel's character without just cause."

As an initial matter, we must determine whether Mother has standing to raise this issue.[6] The court in *Atkins v. Motycka* faced a similar issue, where the trial court had, *sua*

---

[4] In an appendix to her brief Mother includes an affidavit stating that Father has not paid support or provided health insurance for the children since entry of the October 18, 2017 order; nothing in this opinion should be construed to prevent or prohibit Mother from seeking relief with the trial court or through the Department of Children Services' Child Support Enforcement Services, along with any further review of the modification to the parenting plan as contemplated by the October 18, 2017 Order.

[5] The order stated:

> IT IS FURTHER ORDERED that the Mother and stepfather, Jake Seipel, are hereby ENJOINED AND RESTRAINED from making any derogatory comments about the Father to or in the presence of the minor children or allowing any third parties to do so and, further, from discussing the allegations of sexual abuse against the parties' daughter or any issue related to the parties' divorce, the Father's divorce from his second wife or issues related to any issue in controversy in this litigation.
>
> IT IS FURTHER ORDERED that the Mother, Sima Aryan (Seipel) and stepfather, Jake Seipel, are hereby ENJOINED AND RESTRAINED from attempting to interfere with or discourage either child's parenting time with the Father.
>
> IT IS FURTHER ORDERED that the stepfather, Jake Seipel, is hereby ENJOINED AND RESTRAINED from accompanying the Mother to any counseling of the parties' daughter, or from exiting his residence at any time the Father is picking up or returning the children from parenting time.

[6] "Courts use the doctrine of standing to determine whether a litigant is entitled to pursue judicial relief as to a particular issue or cause of action." *City of Memphis v. Hargett*, 414 S.W.3d 88, 97 (Tenn. 2013)

*sponte*, added the father's paramour, whom he intended to marry, as a party and enjoined her from having any contact with the mother or the parties' children "at any place or at any time whatsoever." No. M2007-02260-COA-R3-CV, 2008 WL 4831314, at *2 (Tenn. Ct. App. Nov. 6, 2008). The court determined that because the injunction would significantly affect the father's legal right and ability to maintain a relationship with his children, the father's constitutional right to privacy was also affected, thus giving him standing to challenge the validity of the injunction against his paramour. *Id*. at *5. After making that determination, the court addressed the issue of whether the trial court had jurisdiction to issue the injunction and held that, because the paramour had not been served with process or consented to being added as a party, the court lacked jurisdiction to issue the injunction. *Id*. at *6.

Unlike the injunction at issue in *Atkins v. Motycka*, the restraints imposed in the injunction against Mr. Seipel do not affect Mother's constitutional rights or ability to maintain her relationship with the children.[7] For this reason, Mother does not have standing to challenge the injunction.

### 4. Rule 11 Motion

Mother appeals the court's denial of her "Ex Parte Emergency Petitioners Rule 11 Motion, Motion To Dismiss, Motion to Sanction Father and [Counsel] For Father Under Rule 11." The motion, filed by Mother, *pro se*, on July 1, 2016, contains seven pages of what Mother characterizes as "lies, hearsay, frivolous accusations, wrong dates of court proceedings, and slanderous statements that have NO factual basis or documentation attached in the filings," which Mother contends violates Tennessee Rule of Civil Procedure 11.[8] As relief, she asked that the court dismiss a motion filed by Father, that Father be ordered to prove that he has completed all court ordered probation, anger management, and therapy "before being able to file any further motions concerning parenting time with the minor children," and that the court impose sanctions as it deems necessary "for perpetration of fraud on this court." The court took the motion under advisement "pending additional proof at the final hearing of this cause," and in the October 18, 2017 Order, the court denied the motion.

---

(citing *ACLU of Tenn. v. Darnell,* 195 S.W.3d 612, 619 (Tenn.2006); *Knierim v. Leatherwood,* 542 S.W.2d 806, 808 (Tenn.1976)).

[7] Save for the specific, reasonable prohibition on Mr. Seipel's accompanying Mother to counseling sessions with the daughter or leaving his residence when Father picks the children up or drops them off, Mother is subject to the same restrictions, which are common in divorce decrees involving contentious parties.

[8] Mother erroneously cites Rule 11 of the Federal Rule of Civil Procedure in the motion.

Relative to this issue, Mother's entire argument in her brief on appeal states:

> The Trial Court unilaterally dismissed Ex Parte Emergency Rule 11 motion. It appears that the court dismissed the Rule 11 motion with bias, prejudice, and without a fair hearing based on the merits and facts of the filing. The trial court appears to have a consistent pattern of behavior that is in conflict with the Code of Judicial Conflict and for this reasons Ms. Aryan has no confidence in a fair Trial Court Judiciary.

On this issue, Mother's brief does not comply with the requirements of Rule 27 of the Tennessee Rules of Appellate Procedure in several respects. This court was confronted with a similar situation in *Lykins v. Key Bank USA, NA,* and held:

> In *Bean v. Bean,* 40 S.W.3d 52 (Tenn. Ct. App. 2000), this Court was confronted with similar deficiencies in a brief, including the failure to comply with Tenn. R. App. P. 27, and Rules 6 and 15 of the Rules of the Court of Appeals. We dismissed the appeal, stating:
>
>> Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue. . . . Moreover, an issue is waived where it is simply raised without any argument regarding its merits. . . .
>>
>> Because of the numerous deficiencies in Appellant's brief, we decline to address the issues raised. As noted in *England v. Burns Stone Company, Inc.,* 874 S.W.2d 32, 35 (Tenn. Ct. App. 1993), parties cannot expect this court to do its work for them. This Court is under no duty to verify unsupported allegations in a party's brief, or for that matter consider issues raised but not argued in the brief. . . .
>>
>> For the foregoing reasons we dismiss this appeal with costs of the appeal assessed to appellant.
>
> . . . . We have relied upon the analysis in *Bean* in subsequent cases to reach similar results when issues were not properly addressed or presented in briefs. . . .

No. E2005-01572-COA-R3-CV, 2006 WL 2482963, at *5 (Tenn. Ct. App. Aug. 29, 2006) (some citations omitted). For the same reasons, the deficiencies in Mother's brief constitute a waiver of this issue.

### 5. Attorney's Fees Awarded to Father

Mother's final argument address the court's award of $15,000 to Father for attorney's fees and costs incurred. Again, Mother's brief does not contain citations to relevant pleadings, hearing exhibits, or testimony; her short argument concludes by stating "[Father] should have been found in willful contempt by the trial court, however, the trial court assessed attorney's fees to [Mother]." For the reasons set forth in the immediately preceding section of this opinion, this issue is waived.

Having found no reversible error on the part of the trial court, we affirm the judgment.[9]

_____
RICHARD H. DINKINS, JUDGE

---

[9] While the case has been pending on appeal, Mother filed an "Emergency Notice of Issue," in which she addresses matters which have arisen after the filing of the Notice of Appeal. Our jurisdiction is appellate only, and these matters should be addressed to the trial court.