# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 23, 2015 Session

### IN RE AVA B.

**Appeal from the Circuit Court for Lincoln County**
**No. C1000158     Franklin L. Russell, Judge**

_____

**No. M2014-02408-COA-R10-PT – Filed April 27, 2016**
_____

We granted an extraordinary appeal to consider a trial court's refusal to dismiss a petition to terminate parental rights. Following their divorce, the child's father filed a petition to terminate the parental rights of the mother. The mother moved to dismiss for lack of standing. In response, the father amended his petition to add his mother, the child's grandmother, as an additional petitioner. The mother renewed her motion to dismiss. We reverse the trial court's denial of the motion to dismiss because both the father and his mother lack standing.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Alison Malone, Fayetteville, Tennessee, for the appellant, Ziara B.

Radford H. Dimmick, Nashville, Tennessee, for the appellee, Benny B.

## OPINION

Ziara B. ("Mother") and Benny B. ("Father") are the adoptive parents of Ava B. After what appears to have been an acrimonious proceeding lasting nearly three years, in August 2013, the Circuit Court for Lincoln County, Tennessee, granted Father a divorce from Mother. The court also found Mother in contempt and ordered her to jail for ten days on each of eighteen counts. However, the court suspended the jail time on the condition that

Mother,

> Refrain[ed] from having contact with [Father] for any purpose, by any means, other than as necessary for the coordination of, and issues surrounding the parties' daughter, Ava.  Both parties are hereby enjoined and restrained from contacting the other party, by any means, other than as necessary for the coordination of, and issues surrounding the parties' daughter, Ava.

An agreed permanent parenting plan, which was adopted by the court, designated Father the primary residential parent and granted him 285 days of parenting time and Mother 80.

Despite the entry of a final judgment of divorce, litigation between Father and Mother continued unabated.  In November, Father petitioned the court to find Mother guilty of criminal contempt and to imprison Mother based on the prior findings of civil contempt.  Mother ultimately served thirty days in the Lincoln County Jail.

On February 6, 2014, Father filed a petition in the divorce case to terminate the parental rights of Mother.  In the petition, Father alleged that Mother had "repeatedly violated the terms of said final decree and parenting plan by harassing the Father, failing to pay child support as ordered, and failing to exercise parenting time with the minor child." Father also alleged that Mother had expressed an interest in relinquishing her parental rights and that Mother was "incompetent to adequately provide for the further care and supervision of the minor child because her mental condition is presently so impaired." In a subsequent motion, Father requested that the trial court suspend Mother's parenting time pending the outcome of the petition to terminate parental rights.  The trial court granted the motion on April 9, 2014.

On June 30, 2014, Father filed an amended petition to terminate parental rights.  In addition to the allegations found in the original petition, Father alleged that Mother had "bargained with [Father] to terminate her parental rights to the minor child in exchange for avoiding a potential 180 day jail sentence for her ongoing contempt of this Court's orders." Father also alleged that Mother had "consistently whittled down her parenting time obligations so as to avoid as much parental responsibility as possible."  In addition to requesting termination of parental rights, Father requested, as alternative relief, "that Mother's parenting time be eliminated or modified to include supervision . . . ."

Mother filed a motion to dismiss the petition on the basis of lack of subject matter jurisdiction.  Specifically, Mother argued that Father lacked standing, and therefore, the trial court did not have subject matter jurisdiction.  In support of the motion, Mother filed notarized statements by an apparent family friend and Mother's brother, neither of which had

any bearing on the issue of standing. Later the parties agreed that the motion to dismiss would be treated as a motion for summary judgment, and Mother filed a statement of undisputed, material facts. The "facts" upon which Mother relied were the allegations contained in Father's petition to terminate parental rights.

Father responded to the motion for summary judgment, primarily arguing that, as a motion for summary judgment, the motion to dismiss was procedurally deficient. Father also filed a motion to add a party plaintiff. Father sought to add Ava's paternal grandmother ("Grandmother") as a petitioner seeking to terminate Mother's parental rights.

The trial court granted the motion to add Grandmother. Mother then filed "MOTHER'S AMENDED MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT REGARDING ADDED PLAINTIFF." Mother claimed dismissal was appropriate under Tennessee Rule of Civil Procedure 12.02(1) and (6) because Grandmother lacked standing.

Later, Father and Grandmother filed a "SECOND PETITION TO TERMINATE THE PARENTAL RIGHTS OF THE MOTHER, FOR CRIMINAL CONTEMPT AND TO PLACE SENTENCE INTO EFFECT AND TO MODIFY PARENTING PLAN" (the "Second Petition"). In the Second Petition, Father and Grandmother alleged that Mother had violated prior court orders by failing to pay child support for four consecutive months and that such "actions meet the legislature's definition of abandonment for the purposes of terminating the parental rights of the abandoner, in this case the Mother." As relief, they asked that "Mother's parental rights would be forever terminated and vested with the Father and Paternal Grandmother." Alternatively, Father and Grandmother asked that Mother's alleged violations of prior court orders be punished as criminal contempt or that she "be sentenced to incarceration in the Lincoln County Jail for 150 days," or that Mother's visitation "be supervised by a responsible adult who c[ould] ensure the safety of the minor child."

The trial court denied the motion for summary judgment. Mother filed an application seeking leave for an interlocutory appeal, which the court also denied. Thereafter, we granted Mother's petition for an extraordinary appeal. *See* Tenn. R. App. P. 10.

## II. ANALYSIS

### A. Standard of Review

As an initial matter, we must determine whether the trial court treated Mother's motion as a motion to dismiss, as it indicated in the transcript of the hearing, or as motion for

summary judgment, as it indicated in its order. The reason is that "[t]he difference between a motion to dismiss and a motion for summary judgment is more than academic when it comes to the standard of review." *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001). At first glance, Mother's amended motion to dismiss and in the alternative for summary judgment appears to be a hybrid, but a closer examination shows that the motion does not rely upon anything outside of Father's pleadings and does not comply with Tennessee Rule of Civil Procedure 56. From our review of the transcript and the pleadings, the court did not rely on matters outside of the pleadings when it denied the motion, and therefore, we conclude that the court treated the motion as a motion to dismiss.

Lack of standing may be raised as a defense in a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss.[1] *Knierim v. Leatherwood,* 542 S.W.2d 806, 808 (Tenn. 1976). A Rule 12.02(6) motion, also known as a motion to dismiss for failure to state a claim upon which relief can be granted, "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.,* 346 S.W.3d 422, 426 (Tenn. 2011). Therefore, "[t]he resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id.*

In considering a 12.02(6) motion, we "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist,* 2 S.W.3d 919, 922 (Tenn. 1999) (citing *Riggs v. Burson,* 941 S.W.2d 44, 47 (Tenn. 1997)). Making such a determination presents a question of law. Our review of a trial court's determinations on

---

[1] Mother argues that standing can also be challenged under Tennessee Rules of Civil Procedure 12.02(1) because, according to her, if a plaintiff lacks standing, the court also lacks subject matter jurisdiction. Her argument stems from our Supreme Court's conclusion that, because a mother did not have standing to file a petition to terminate a father's parental rights, "the trial court was therefore without subject matter jurisdiction to hear Mother's petition." *Osborn v. Marr*, 127 S.W.3d 737, 741 (Tenn. 2004). However, motions under Tennessee Rule of Civil Procedure 12.02(1) to dismiss for lack of subject matter jurisdiction "differ significantly" from motions under Tennessee Rule of Civil Procedure 12.02(6) to dismiss for failure to state a claim upon which relief can be granted. *Wilson v. Sentence Info. Servs.*, No. M1998-00939-COA-R3-CV, 2001 WL 422966, at *4 (Tenn. Ct. App. Apr. 26, 2001). For one example, "motions to dismiss merely on jurisdictional grounds are not converted to summary judgment motions when material factual disputes arise." *Id*. (citing *Chenault v. Walker,* 36 S.W.3d 45, 55 (Tenn. 2001)). For another, unless the court otherwise specifies, a dismissal for failure to state a claim upon which relief can be granted operates as an adjudication upon the merits. Tenn. R. Civ. P. 41.02(3). A dismissal for lack of jurisdiction does not. *Id.*

4

issues of law is de novo, with no presumption of correctness. *Id.* (citing *Stein v. Davidson Hotel Co.,* 945 S.W.2d 714, 716 (Tenn. 1997)).

## B. Standing

Standing is a judicially created doctrine that asks whether a party advancing a claim is "properly situated to prosecute the action." *Knierim,* 542 S.W.2d at 808. Courts "'may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed.'" *Mayhew v. Wilder,* 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001) (quoting 59 Am. Jur. 2d *Parties* § 30 (1987)). Standing limitations also restrict judicial power by keeping courts from deciding "abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin,* 422 U.S. 490, 500 (1975).

A standing analysis focuses on the party, rather than the merits of the claim. *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville and Davidson Cnty.,* 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). Even so, the standing inquiry "often turns on the nature and source of the claim asserted." *Id.* The claim can be, and often is, "created or defined by statute." *Wood v. Metro. Nashville & Davidson Cnty. Gov't,* 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005).

Standing to petition to terminate parental rights is statutorily restricted. In pertinent part, Tennessee Code Annotated § 36-1-113(b)(1) provides as follows:

> The prospective adoptive parent or parents, including extended family members caring for a related child, any licensed child-placing agency having custody of the child, the child's guardian ad litem, or the department [of children's services] shall have standing to file a petition pursuant to this part or title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of the child. The child's parent, pursuant to subdivision (g)(11), shall also have standing to file a petition pursuant to this part or title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of the child.

Tenn. Code Ann. § 36-1-113(b)(1) (Supp. 2015). The statute provides only a single circumstance under which a parent can petition to terminate the parental rights of another parent, where the respondent "parent has been found to have committed severe child sexual abuse under any prior order of a criminal court." *Id.* § 36-1-113(g)(11)(A)(i). Here, Father made no claim that Mother had been convicted of an offense involving severe child sexual

abuse, and therefore, Father had no standing to petition to terminate Mother's parental rights.

Grandmother also lacked standing to petition to terminate Mother's parental rights. Father argues that standing is conferred on Grandmother as she is an "extended family member." However, this argument takes the language of the statute out of context. The extended family member must be "caring for a *related* child." *See id.* § 36-1-113(b)(1) (emphasis added). Grandmother is not. However, even if she were, she would still lack standing.

To petition to terminate parental rights, the extended family member caring for a related child must be a "prospective adoptive parent."[2] *Id.* Grandmother cannot be a "prospective adoptive parent." To adopt, one must have more than intent or desire. *In re Sonya M.*, No. M2015-00064-COA-R3-PT, 2015 WL 4381567, at *3 (Tenn. Ct. App. July 16, 2015). Specifically, to adopt Ava, Grandmother would have to terminate the parental rights of her son, as well as those of Mother. *See* Tenn. Code Ann. § 36-1-121(a) (2014) ("[A] final order of adoption . . . establishes from that date the relationship of parent and child between the adoptive parent or parents and the adopted child as if the adopted child had been born to the adoptive parent or parents and the adopted child shall be deemed the lawful child of such parent or parents, the same as if the child had been born to the parent or parents, for all legal consequences and incidents of the biological relation of parents and children."); *see also id.* § 36-1-115(c) (legal or biological parent of a child to be adopted does not affect his or her legal relationship to the child by joining in a spouse's petition to adopt the child). The allegations of the Second Petition make clear that she does not intend to terminate Father's parental rights, and it is equally clear that Father does not intend to surrender his parental rights.[3] As noted above, the Second Petition asks for Mother's parental rights to be terminated and "vested with the Father and Paternal Grandmother."

---

[2] "Prospective adoptive parents" is a statutorily defined term,

> mean[ing] a non-agency person or persons who are seeking to adopt a child and who have made application with a licensed child-placing agency or licensed clinical social worker or the department for approval, or who have been previously approved, to receive a child for adoption, or who have received or who expect to receive a surrender of a child, or who have filed a petition for termination or for adoption.

Tenn. Code Ann. § 36-1-102(41) (Supp. 2015).

[3] Under a "surrender" a "parent or guardian relinquishes all parental or guardianship rights of that parent or guardian to a child, to another person or public child care agency or licensed child-placing agency for the purposes of making that child available for adoption." Tenn. Code Ann. § 36-1-102(47) (Supp. 2015).

### III. CONCLUSION

Father and Grandmother lacked standing to petition to terminate the parental rights of Mother. We reverse the trial court's order denying the motion to dismiss and remand the case with instructions to dismiss the petition to terminate parental rights.

_____

W. NEAL MCBRAYER, JUDGE

7