IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 8, 2017 Session

## GEORGE GRANT ET AL. v. ELAINE ANDERSON, CLERK OF WILLIAMSON COUNTY ET AL.

**Appeal from the Chancery Court for Williamson County**
No. 44859    Joseph Woodruff, Chancellor

_____

**No. M2016-01867-COA-R3-CV**
_____

Plaintiffs filed suit seeking declaratory relief to determine the continuing validity of laws relating to the issuance of marriage licenses and to determine whether the issuance of marriage licenses violates the state constitution. Plaintiffs also asked the trial court to enjoin the issuance of all marriage licenses in Williamson County, Tennessee. Upon the county clerk's motion to dismiss, the trial court concluded, among other things, that the plaintiffs lacked standing. We affirm the dismissal of the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

David E. Fowler, Franklin, Tennessee, for the appellants, George Grant, Lyndon Allen, Tim McCorkle, Larry Tomczak, and Deborah Deaver.

Lisa M. Carson and Lee Ann Thompson, Franklin, Tennessee, for the appellee, Elaine Anderson, Clerk of Williamson County, Tennessee.

## OPINION

### I.

On January 21, 2016, plaintiffs George Grant, Larry Tomczak, Lyndon Allen, Tim McCorkle, and Deborah Deaver filed a complaint for declaratory judgment in the Chancery Court for Williamson County. Two months later, the plaintiffs amended their

complaint. The amended complaint for declaratory judgment identified plaintiffs Grant and Allen as "ministers . . . having the care of souls" and, as such, authorized by state law to "solemnize the rite of matrimony." *See* Tenn. Code Ann. § 36-3-301(a)(1) (2017). The complaint identified plaintiffs Tomczak, McCorkle, and Deaver as "residents and taxpayers of Williamson County, Tennessee . . . [who were] registered to vote in Tennessee," although Mr. Tomczak was also described as a minister.

In an introductory paragraph, the plaintiffs concisely stated the declaratory relief requested. The plaintiffs sought "a declaration that those provisions of the Tennessee law relative to the licensing of marriages are no longer valid and enforceable" since the United States Supreme Court's decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). The plaintiffs also sought a declaration that "the continued issuance of marriage licenses" following the *Obergefell* decision violates their rights under the Tennessee Constitution. The complaint named as defendants Elaine Anderson, County Clerk for Williamson County, and Attorney General and Reporter Herbert H. Slatery III.

Understanding the issues raised by the plaintiffs' case requires an appreciation of the issues in *Obergefell* and the Tennessee case underlying that decision. *Obergefell* decided cases arising from four states that "define[d] marriage as a union between one man and one woman." *Id*. at 2593. The Court considered two issues. First, "whether the Fourteenth Amendment requires a State to license a marriage between two people of the same sex." *Id*. And second, "whether the Fourteenth Amendment requires a State to recognize a same-sex marriage licensed and performed in a State which does grant that right." *Id*.

The Tennessee case, *Tanco v. Haslam*, raised the latter of the two issues. *Id*. In *Tanco*, same-sex couples who lived and were legally married in other states before moving to Tennessee challenged the constitutionality of article XI, section 18, of the Tennessee Constitution[1] and Tennessee Code Annotated § 36-3-113.[2] 7 F. Supp. 3d 759,

---

[1] Article XI, section 18, of the Tennessee Constitution, which was adopted and ratified in 2006, provides as follows:

> The historical institution and legal contract solemnizing the relationship of one (1) man and one (1) woman shall be the only legally recognized marital contract in this state. Any policy or law or judicial interpretation, purporting to define marriage as anything other than the historical institution and legal contract between one (1) man and one (1) woman, is contrary to the public policy of this state and shall be void and unenforceable in Tennessee. If another state or foreign jurisdiction issues a license for persons to marry and if such marriage is prohibited in this state by the provisions of this section, then the marriage shall be void and unenforceable in this state.

TENN. CONST. art. XI, § 18.

[2] The statute at issue in *Tanco* provides as follows:

762 (M.D. Tenn.), *rev'd sub nom. DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), *rev'd sub nom. Obergefell*, 135 S. Ct. 2584.  Both the constitutional provision and the statute declared the public policy of this State to be the legal recognition of a marital contract between one man and one woman only and that any other forms of marriage were "void and unenforceable" in the State.  TENN. CONST. art. XI, § 18; Tenn. Code Ann. § 36-3-113 (2017).

In *Obergefell*, the Supreme Court concluded "that the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." *Obergefell*, 135 S. Ct. at 2604.  So the Court held that "the State laws challenged . . . in these cases are now . . . invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Id*. at 2605.  The Court further held "that there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." *Id*. at 2608.

Here, the plaintiffs seek a declaration that, because of the holdings in *Obergefell*, Tennessee Code Annotated § 36-3-103(a) and (c)(1) and § 36-3-104 are invalid and unenforceable.  Section 36-3-103(a) requires parties desiring to marry to first present to the minister or officer who will solemnize the marriage "a license under the hand of a county clerk in this state, directed to such minister or officer, authorizing the solemnization of a marriage between the parties." Tenn. Code Ann. § 36-3-103(a) (2017).  Subsection (c)(1) of that same section authorizes and directs the county clerk to

---

(a) Tennessee's marriage licensing laws reinforce, carry forward, and make explicit the long-standing public policy of this state to recognize the family as essential to social and economic order and the common good and as the fundamental building block of our society. To that end, it is further the public policy of this state that the historical institution and legal contract solemnizing the relationship of one (1) man and one (1) woman shall be the only legally recognized marital contract in this state in order to provide the unique and exclusive rights and privileges to marriage.

(b) The legal union in matrimony of only one (1) man and one (1) woman shall be the only recognized marriage in this state.

(c) Any policy, law or judicial interpretation that purports to define marriage as anything other than the historical institution and legal contract between one (1) man and one (1) woman is contrary to the public policy of Tennessee.

(d) If another state or foreign jurisdiction issues a license for persons to marry, which marriages are prohibited in this state, any such marriage shall be void and unenforceable in this state.

Tenn. Code Ann. § 36-3-113 (2017).

take certain actions following the marriage and receipt of the license executed by the officiant:

> The county clerk issuing a marriage license is hereby authorized to record and certify any license used to solemnize a marriage that is properly signed by the officiant when such license is returned to the issuing county clerk. The issuing county clerk shall forward the record to the office of vital records to be filed and registered with such office. If a license issued by a county clerk in Tennessee is used to solemnize a marriage outside Tennessee, such marriage and parties, their property and their children shall have the same status as if the marriage were solemnized in this state. A county clerk is prohibited from issuing a license for a marriage that is prohibited in this state.

*Id*. § 36-3-103(c)(1). Section 36-3-104 details the requirements for a marriage license application. Among other things, the application must state "the names, ages, addresses and social security numbers of both the proposed male and female contracting parties." *Id*. § 36-3-104(a)(1) (2017). The section also prohibits a county clerk or deputy clerk from issuing a marriage license until a written application containing all the required information is submitted. *Id*.

Plaintiffs also claim that, post-*Obergefell*, certain criminal penalties no longer apply. Specifically, plaintiffs point to the penalties that result from an officiant's failure to return a marriage license to the county clerk or from an officiant solemnizing a marriage between parties not capable of marriage. *See id*. §§ 36-3-303, -305 (2017).

Plaintiffs acknowledge that neither Tennessee Code Annotated § 36-3-103 nor § 36-3-104 were at issue in *Tanco*. And plaintiffs further acknowledge "that *Obergefell* never purported to 'interpret' the [Tennessee] license laws." Still, plaintiffs argue that the holdings in *Obergefell* serve to either invalidate Tennessee's marriage licensing laws or create an uncertainty, namely "how the right of same-sex couples to marry . . . is to be effectuated."

In response to the amended complaint for declaratory judgment, the court clerk, defendant Anderson, moved to dismiss the complaint. As grounds, she cited Rule 12.02(1) and (6) of the Tennessee Rules of Civil Procedure, "lack of jurisdiction over the subject matter" and "failure to state a claim upon which relief can be granted." *See* Tenn. R. Civ. P. 12.02. Although she raised the issue of the court's subject matter jurisdiction, her motion instead focused on justiciability. According to Ms. Anderson, plaintiffs "failed to present a justiciable case or controversy for the following reasons: (1) Plaintiffs cannot establish standing . . . ; (2) Minister Plaintiffs' claims are not ripe for adjudication; and (3) [she] d[id] not have a real and adverse interest sufficient to establish a legal controversy."

4

## II.

The chancery court dismissed the action. The court first held that the plaintiffs lacked standing, concluding that they failed to "aver a special interest or a special injury not common to the public generally." In reaching its conclusion, the court examined the claims of the plaintiffs not only as a whole but also by category, independently analyzing the allegations of the "Minister Plaintiffs" and the "Citizen Plaintiffs."

As an independent basis for dismissal of the claims of the Minister Plaintiffs, the court also determined the ministers' claims were not ripe. In its view, the Minister Plaintiffs were "not faced with a choice of immediately complying with a burdensome law or risking serious criminal and civil penalties." And the court saw "no need for immediate compliance or immediate action of any sort since Minister Plaintiffs [we]re not being compelled to solemnize any upcoming marriages, and may never be asked to solemnize a state-issued license again."

The court also agreed with Ms. Anderson's contention that she did not have an adverse interest to the plaintiffs. Although state law prohibits county clerks "from issuing a marriage license for a marriage that is prohibited [by the laws of the state]," the penalty for violation applies only if the violation was "not in good faith." Tenn. Code Ann. §§ 36-3-103(c)(1), -111 (2017). As noted by the court, in their response to the motion to dismiss, plaintiffs acknowledged that Ms. Anderson was issuing licenses to same-sex couples on the good faith assumption that *Obergefell* both authorized and required the issuance of marriage licenses to same-sex couples.

Finally, although the Attorney General did not file a motion to dismiss, the court determined that dismissal of the entire action was appropriate. The court reasoned that "Tennessee's Constitution restricts the cases a court may entertain to those in which the parties have standing, [and] therefore, without standing, a court has no subject matter jurisdiction." From that premise and noting its holding that the plaintiffs lacked standing, the court concluded it "[wa]s required to dismiss this action against both the Attorney General as well as Ms. Anderson because this Court does not have subject matter jurisdiction."

## III.

As an initial matter, we must determine whether the chancery court had subject matter jurisdiction over the plaintiffs' claims. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) (noting that subject matter jurisdiction "should be viewed as a threshold inquiry"). Subject matter jurisdiction refers to a court's "lawful authority to adjudicate a controversy brought before it." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). A court's subject matter jurisdiction

5

is derived—"either explicitly or by necessary implication"—from the state constitution or statute. *Benson v. Herbst*, 240 S.W.3d 235, 239 (Tenn. Ct. App. 2007). Neither the conduct of the parties nor any agreement of the parties plays a role; "parties cannot confer subject matter jurisdiction on a trial . . . court by appearance, plea, consent, silence, or waiver." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

The existence of subject matter jurisdiction depends on "the nature of the cause of action and the relief sought." *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). If subject matter jurisdiction is lacking, the court must dismiss the case. *Dishmon*, 15 S.W.3d at 480. Whether a court lacks subject matter jurisdiction presents a question of law, which we review de novo. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712-13 (Tenn. 2012).

Although our supreme court has stated that "[w]hen a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite," *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004), that is not the case here. Subject matter jurisdiction and standing are "two distinct concepts." *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000). The court's conclusion that the plaintiffs lacked standing did not compel the conclusion that it also lacked subject matter jurisdiction.

We conclude that the chancery court did have subject matter jurisdiction. In this instance, subject matter jurisdiction is derived from the Tennessee Declaratory Judgments Act.[3] Under the Act, "[c]ourts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-102(a) (2012). The chancery court is a court of record, and the plaintiffs are seeking a declaration of their respective rights. So we next consider whether the plaintiffs had standing to seek declaratory or injunctive relief.

**IV.**

Lack of standing may be raised as a defense under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). A Rule 12.02(6) motion, also known as a motion to dismiss for failure to state a claim upon which relief can be granted, "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Thus, "[t]he resolution of a 12.02(6)

---

[3] The enactment provided that it could "be cited as the Uniform Declaratory Judgments Act." 1923 Tenn. Pub. Acts 104.

motion to dismiss is determined by an examination of the pleadings alone." *Id.* By filing a motion to dismiss, the defendant "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Leach v. Taylor*, 124 S.W.3d 87, 90 (Tenn. 2004); *see also Webb*, 346 S.W.3d at 426; *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005). When a complaint is challenged by a Rule 12.02(6) motion, the complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997)). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id.* (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

In contrast to subject matter jurisdiction, standing is a judicially created doctrine that asks whether a party advancing a claim is "properly situated to prosecute the action." *Knierim*, 542 S.W.2d at 808. Courts "may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed." *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001) (quoting 59 AM. JUR. 2D *Parties* § 30 (1987)). Standing limitations also restrict judicial power by keeping courts from deciding "abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

A standing analysis focuses on the party, rather than the merits of the claim. *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). Even so, the standing inquiry "often turns on the nature and source of the claim asserted." *Id.*

Under the Tennessee Declaratory Judgments Act, persons affected by a state statute have standing to request a declaration of their rights under a statute. In pertinent part, the Act provides as follows:

> [a]ny person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

Tenn. Code Ann. § 29-14-103 (2012). Still "some real interest must be in dispute." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008) (citing *Goetz v. Smith*, 278 S.W. 417, 418 (Tenn. 1925)). To establish standing under the Act, "the person seeking a declaratory judgment must allege facts which show he has a real, as

7

contrasted with a theoretical, interest in the question to be decided and that he is seeking to vindicate an existing right under presently existing facts." *Burkett v. Ashley*, 535 S.W.2d 332, 333 (Tenn. 1976).

A.

Here, the source of the plaintiffs' claims is the Supreme Court's decision in *Obergefell*. In their amended complaint for declaratory judgment, the plaintiffs identify eight controversies that exist due to *Obergefell*. The first five of the controversies are premised on the notion that Tennessee statutes relating to marriage license applications, requiring marriage licenses, and specifying certain duties of the county clerk with respect to such licenses are invalid and unenforceable. *See* Tenn. Code Ann. §§ 36-3-103(a), -103(c)(1), -104.

We can quickly dispel this notion by looking to *Obergefell*. The Supreme Court held that "the State laws challenged by Petitioners in these cases are now held invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Obergefell*, 135 S. Ct. at 2605. This holding states that it applies to "the State laws challenged by Petitioners." *Id.* And plaintiffs have acknowledged that the laws challenged in *Obergefell* did not include the Tennessee statutes that the plaintiffs now assert are invalid and unenforceable. So the plaintiffs' alleged interest is based on a contingency, invalidation of all of Tennessee's marriage licensing laws, that may never occur. Even in the context of declaratory judgment actions, "[i]t is well settled" that our courts decline to answer such questions. *Story v. Walker*, 404 S.W.2d 803, 804 (Tenn. 1966); *see also* 26 C.J.S. *Declaratory Judgments* § 31, Westlaw (database updated Mar. 2018) ("The courts do not issue advisory opinions or answer hypothetical questions where there is no case or controversy, and this rule does not change when a declaratory judgment is involved . . . .").

Perhaps more importantly, to the extent Tennessee statutes other than those challenged in *Tanco v. Haslam* are implicated, they are solely implicated "to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Obergefell*, 135 S. Ct. at 2605. To create their first five controversies, the plaintiffs would have us read the words "to the extent they exclude" out of the opinion. Even the dissenters in *Obergefell* would not claim that the decision wiped away marriage licensing laws.

In his dissent, Chief Justice John Roberts complained that the ruling in *Obergefell* "invalidate[d] the marriage laws of more than half the States and orders the transformation of a social institution that has formed the basis of human society for millennia, for the Kalahari Bushmen and the Han Chinese, the Carthaginians and the Aztecs." *Id*. at 2612 (Roberts, C.J., dissenting). But he still recognized that the Court was "ordering every State to *license* . . . same-sex marriage." *Id*. at 2611 (emphasis

8

added). And he accused the Court of taking a "drastic step," namely "requiring every State to *license* and recognize marriage between same-sex couples." *Id*. at 2623-24 (emphasis added).

Justice Clarence Thomas, in his dissent, states "[t]he majority's decision today will require States *to issue marriage licenses* to same-sex couples." *Id*. at 2631 (Thomas, J., dissenting) (emphasis added). And Justice Samuel Alito explains in his dissent that the use of the term "recognize marriage" is "shorthand for *issuing marriage licenses* and conferring those special benefits and obligations provided under state law for married persons." *Id*. at 2640 n.1 (Alito, J., dissenting) (emphasis added). These references to the issuance of marriage licenses would be out of place had *Obergefell*, as plaintiffs claim, invalidated Tennessee's marriage license laws.

Invalidation of our license laws also would be an unusual step. The Supreme Court generally favors limited remedies "when confronting a constitutional flaw in a statute." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006). In such circumstances, the remedy is informed by three interrelated principles, which take into account separation of powers and the proper roles of the legislative and judicial branches. *Id*. at 329. As the Court explained in *Ayotte v. Planned Parenthood of Northern New England*:

> [f]irst, we try not to nullify more of a legislature's work than is necessary, for we know that "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." It is axiomatic that a "statute may be invalid as applied to one state of facts and yet valid as applied to another." Accordingly, the "normal rule" is that "partial, rather than facial, invalidation is the required course," such that a "statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact."

> Second, mindful that our constitutional mandate and institutional competence are limited, we restrain ourselves from "rewrit[ing] state law to conform it to constitutional requirements" even as we strive to salvage it. Our ability to devise a judicial remedy that does not entail quintessentially legislative work often depends on how clearly we have already articulated the background constitutional rules at issue and how easily we can articulate the remedy. . . .

> Third, the touchstone for any decision about remedy is legislative intent, for a court cannot "use its remedial powers to circumvent the intent of the legislature." After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?

*Id*. at 329-30 (citations omitted). In Tennessee, the legislative intent is clear. Our Legislature has expressed its preference that the invalidity of one portion of a statute should not affect the remaining portions of the statute. *See* Tenn. Code Ann. § 1-3-110 (2014).[4]

B.

The last three of the eight controversies identified in the amended complaint for declaratory judgment stem from "the issuance of marriage licenses without a statute by the General Assembly prescribing the duties of the [county clerk]." These alleged controversies do not arise solely from the mistaken notion that Tennessee's marriage license laws were totally invalidated by *Obergefell* and are now unenforceable. According to the plaintiffs, if our marriage license laws "remain valid, then *Obergefell* failed to tell us how the right of same-sex couples to marry . . . is to be effectuated." This, the plaintiffs assert, creates an uncertainty. To address this claimed uncertainty, we consider the plaintiffs in each of their alleged roles.

1. The Minister Plaintiffs

The Minister Plaintiffs, in their roles as ministers, do not have standing. To the extent their uncertainty arises from licensing of same-sex marriage, they have no real interest for purposes of standing. On appeal, the Minister Plaintiffs claimed to have "alleged that they would continue to solemnize opposite-sex marriages in the future." And our review of the amended complaint shows no factual allegation that the Minister Plaintiffs have or intend to solemnize same-sex marriages.

To the extent their uncertainty arises from opposite-sex marriages, we still conclude that the Minister Plaintiffs lack standing. Declaratory relief may be granted with respect to a penal or criminal statute. *See Erwin Billiard Parlor v. Buckner*, 300 S.W. 565, 566 (Tenn. 1927) (holding that pool room proprietors could seek declaratory judgment that act declaring the operation of pool and billiard rooms for pay and profit was unconstitutional); *see also* W. E. Shipley, Annotation, *Validity, Construction, and Application of Criminal Statutes or Ordinances as Proper Subject for Declaratory Judgment*, 10 A.L.R.3d 727, § 2 (1966) ("[I]t now seems reasonably well settled that in an otherwise proper case declaratory relief may be granted notwithstanding the fact that the declaration is as to the validity or construction of a statute having criminal or penal provisions . . . ."). And the Minister Plaintiffs have challenged the validity of statutes

---

[4] The Legislature has also acted in accord with its preference. Just this year the Legislature adopted a bill to amend Tennessee's marriage license laws relative to the minimum age for marriage, making it unlawful for a county clerk to issue a marriage license when "[e]ither of the contracting parties is under seventeen (17) years of age." H.R. 2134, § 3, 110th Gen. Assemb., Reg. Sess. (Tenn. 2018). How can this be, if as plaintiffs claim, the requirement for the issuance of a marriage license has been completely invalidated? The answer is that it cannot.

10

making it a misdemeanor for an officiant to fail to return a marriage license to the county clerk and making it a misdemeanor and imposing a fine of $500 for solemnizing a marriage between parties not capable of marriage. *See* Tenn. Code Ann. §§ 36-3-303, -305. But their challenge stems from a hypothetical scenario: that there are "no valid marriage license[s] by which Minister Plaintiffs are authorized to solemnize th[e] marriage[s]."

2. The Citizen Plaintiffs

The Citizen Plaintiffs claim that "rights accorded them under the Tennessee Constitution are being violated by the issuance of marriage licenses after *Obergefell*." Specifically, the Citizen Plaintiffs claim that their rights under article I, sections 5, 8, and 23; article II, section 17; and article VII, section 1, have been violated. We must determine then whether issuance of marriage licenses by the county clerk after *Obergefell* invades or infringes on any of the rights under the cited constitutional provisions. The claimed constitutional violations or infringements are grouped into three separate allegations or "controversies."

First, the Citizen Plaintiffs claim deprivation of their rights under article I, section 5 and 8, of our constitution. Article I, section 5, provides for free and equal elections and guarantees that "the right of suffrage . . . shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." TENN. CONST. art. I, § 5. Section 8 guarantees "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." *Id.* art. I, § 8.

The Citizen Plaintiffs contend that "they have been deprived of their right to 'indirectly vote' on the laws prescribing the duties of the County Clerk" through their state representatives and senators. No factual allegations support this claim. On appeal, the Citizen Plaintiffs claim that the county clerk "has unconstitutionally taken it upon herself to decide, without the legislative definition of her authority required under the Tennessee Constitution, what should be done in view of *Obergefell*." According to the Citizen Plaintiffs, the county clerk "essentially rewrote or adjudicated the existing statute by herself and prescribed to herself a duty not existing in the current statute."

Even if, in carrying out her responsibilities, the county clerk had rewritten the marriage license laws or prescribed duties to herself not existing in the marriage license statutes, the Citizen Plaintiffs did not allege how such actions would invade or infringe upon their voting rights or deprive them of their life, liberty, or property. None of the Citizen Plaintiffs alleged that they were denied a marriage license; instead, they complain of the issuance of marriage license to others.

11

Second, the Citizen Plaintiffs claim that the county clerk's actions violate article II, section 17, of our constitution. Article II, section 17, as codified in Tennessee Code Annotated, is entitled "Origin and frame of bills." The title summarizes succinctly the section's purpose. As our supreme court explained,

> So far as section 17, article 2, is concerned, if the various provisions of an act are directed toward a common purpose, and that purpose is expressed in the title, it would make no difference if the several provisions of the act involved all powers of the Legislature. This section of the Constitution regulates the syntax of statutes. It imposes no restriction upon the powers exerted, nor upon the commingling of such powers, so long as the provisions of the statute are not incongruous and are germane to the subject expressed in the caption.

*Davis v. Hailey*, 227 S.W. 1021, 1022 (Tenn. 1921). The Citizen Plaintiffs contend that, if the county clerk's "actions exceed the authority that she legally possesses after *Obergefell*, then Citizen Plaintiff's [sic] constitutional rights under Article II, Section 17 have been violated."

We disagree. The Citizen Plaintiffs misread article II, section 17. Section 17 has nothing to do with the duties or responsibilities of the county clerk or the issuance of marriage licenses; the section has everything to do with the requirements for bills introduced in the Legislature, which are not at issue here.

Finally, the Citizen Plaintiffs claim their rights under article I, section 23, and article VII, section 1, have been rendered "meaningless." Article I, section 23, guarantees citizens the "right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance." TENN. CONST. art. I, § 23. Article VII, section 1, provides, among other things, for the election of a county clerk and that the county clerk's "duties shall be prescribed by the General Assembly." *Id.* art. VII, § 1.

The Citizen Plaintiffs complain that their right to instruct their representatives would be meaningless if the county clerk is "allowed to continue exercising an authority and fulfilling a duty that has not been prescribed to her either by the legislature or 'created' by a final appellate adjudication of how *Obergefell* affected Tenn. Code Ann. [§] 36-3-104(a)." As discussed above, Tennessee Code Annotated § 36-3-104(a)(1) specifies the requirements for a marriage license application and prohibits a county clerk from issuing a marriage license until an application meeting the requirement has been submitted. Tenn. Code Ann. § 36-3-104(a)(1).

If the county clerk is exercising an authority or fulfilling a duty that has not been statutorily prescribed for her, we fail to see how that renders meaningless the Citizen Plaintiffs' "right . . . to instruct their representatives." And it is beyond question that our Legislature retains the constitutional authority to prescribe the duties of the county clerk. In claiming an injury or harm resulting from the county clerk's actions, the Citizen Plaintiffs also seem to ignore that they have a very meaningful say in how the county clerk fulfills her duties. The Citizen Plaintiffs, assuming they remain qualified voters, elect a county clerk every four years. TENN. CONST. art. VII, § 1.

Further, even assuming for the sake of argument that their rights under any of the cited constitutional provisions have been invaded or infringed to a degree, the Citizen Plaintiffs' injuries would be shared by the public at large. "Standing . . . may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens." *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006); *Mayhew*, 46 S.W.3d at 767. Thus, without a particularized injury or harm arising from the county clerk's actions, the Citizen Plaintiffs lack standing. *See City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001).

In a filing of supplemental authority after oral arguments in this case, the Citizen Plaintiffs suggest that the Legislature recently relaxed the particularized injury requirement in these circumstances. Heretofore, "the courts of this state have yet to recognize a general 'public rights' exception to the standing requirement." *Id*. The enactment referenced by the Citizen Plaintiffs added a new section to the chapter of the Tennessee Code addressing statutory construction. The section, which took effect upon becoming law, provides as follows: "Notwithstanding any law to the contrary, a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action." Act of Apr. 2, 2018, ch. 621, 2018 Tenn. Pub. Acts. (codified at Tenn. Code Ann. § 1-3-121).

When a statute designates who may bring an action, "his or her right of action arises directly out of the statute, and he or she needs no title under the substantive law to authorize suit." *Mayhew*, 46 S.W.3d at 768-69 (quoting 59 AM. JUR. 2D *Parties* § 22 (1987)). Our reading of the new statute is that it does not relax the particularized injury requirement for standing in cases "brought regarding the legality or constitutionality of a governmental action." Unlike, for example, the Tennessee Public Meetings Act, which permits "any citizen of the state" to seek relief, Tenn. Code Ann. § 8-44-106(a) (2016), the new statute applies to "any affected person." Act of Apr. 2, 2018, ch. 621, 2018 Tenn. Pub. Acts. (codified at Tenn. Code Ann. § 1-3-121). The language of the new statute is sufficiently similar to the standing provision of the Tennessee Declaratory Judgments Act, which grants standing to "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute." Tenn. Code Ann. § 29-14-103. As such, we conclude that the new statute retains a particularized injury requirement.

13

**V.**

In addition to determining that the plaintiffs lacked standing, the chancery court also determined that the plaintiffs' claims were not ripe and that the county clerk did not have an adverse interest to the plaintiffs. To be ripe, "the dispute [must] ha[ve] matured to the point that it warrants a judicial decision." *B & B Enters. of Wilson Cty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010). To some extent, the ripeness doctrine overlaps with the injury requirement for standing. Erwin Chemerinsky, *A Unified Approach to Justiciability*, 22 CONN. L. REV. 677, 682 (1990). Beyond the existence of a controversy with sufficient immediacy and reality to warrant the declaratory judgment action, there must also be "some one having a real interest in the question who may oppose the declaration sought." *Miller v. Miller*, 261 S.W. 965, 972 (Tenn. 1924); *Hatcher v. Chairman*, 341 S.W.3d 258, 261 (Tenn. Ct. App. 2009); 26 C.J.S. *Declaratory Judgments* § 30.

In light of our conclusion that the allegations of the amended complaint for declaratory judgment did not establish the plaintiffs' standing and the overlap between the doctrines of standing and ripeness, we find it unnecessary to address whether the plaintiffs' claims were also ripe for judicial determination. We decline to address the question of whether the county clerk possessed a real interest sufficient to oppose declaratory relief.

**VI.**

Although we have determined that the chancery court properly dismissed the claims of the plaintiffs for lack of standing upon the motion for the county clerk, there remains one party defendant. The plaintiffs also named the Attorney General of the State as a party under Tennessee Code Annotated § 29-14-107(a). That statute requires a party seeking declaratory relief to name as parties "all persons . . . who have or claim any interest which would be affected by the declaration." Tenn. Code Ann. § 29-14-107(a) (2012). But because the plaintiffs were challenging the issuance of marriage licenses by the county clerk and not necessarily seeking to test the constitutionality of Tennessee's marriage license laws, it does not appear that the Attorney General was a necessary party to this action. *See Shelby Cty. Bd. of Comm'rs v. Shelby Cty. Quarterly Court*, 392 S.W.2d 935, 940 (Tenn. 1965).

Generally, we confine ourselves only to the issues raised by the parties. *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012); Tenn. R. App. P. 13(b). We do so because party control over issue presentation is one of the defining characteristics of the American adversarial system. *See U.S. v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring). Still courts may sometimes engage in a sua sponte review of issues not raised by the parties on appeal. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 121 (1976);

14

*Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Conn.*, 84 A.3d 840, 855-69 (Conn. 2014); *Bell v. Todd*, 206 S.W.3d 86, 90-91 (Tenn. Ct. App. 2005); *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000).  For example, our courts have considered justiciability issues even when parties have not presented such issues for review.  *See, e.g.*, *Hooker v. Haslam*, 437 S.W.3d 409, 433 (Tenn. 2014) (mootness); *Osborn*, 127 S.W.3d at 740 (standing).

Although the Attorney General did not move for dismissal, we conclude it is appropriate to also dismiss any claims against the Attorney General based on standing.  *See Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975) (approving but not encouraging dismissal for failure to state a claim in the absence of a motion to dismiss under Tennessee Rule of Civil Procedure 12).  The standing analysis would be no different if the Attorney General had also moved to dismiss for failure to state a claim upon which relief can be granted.  And the result would be the same.

## VII.

We conclude that the chancery court had subject matter jurisdiction over the proceeding.  But because we conclude that the plaintiffs lacked standing, we affirm the dismissal of the complaint.  The case is remanded for any further proceedings as are necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE